UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LATCHMI RAWATIRAMAN, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:13-cv-01818 |
| | § | |
| TYSON FOODS, INC., WAL-MART | § | |
| ASSOCIATES, INC. AND WAL-MART | § | |
| STORES OF TEXAS, LLC, | § | |
| INDIVIDUALLY, | § | |
| Defendants | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Latchmi Rawatiraman, Plaintiff, complaining of Tyson Foods, Inc. ("Tyson") and Wal-Mart Associates, Inc. and/or Wal-Mart Stores of Texas, LLC, ("Wal-Mart") (hereinafter collectively referred to as "Defendants"), and for cause of action would show the Court as follows:

### I. PARTIES

1.  Plaintiff is a citizen of the state of New York.

2.  Defendant Tyson Foods, Inc. is a citizen of the states of Delaware and Arkansas, as a corporation incorporated in the state of Delaware with its principal place of business in Springdale, Arkansas. Tyson has already made an appearance in this matter through counsel.

3.  Defendants Wal-Mart Associates, Inc. and Wal-Mart Stores of Texas, LLC are both citizens of the states of Delaware and Arkansas, as corporations incorporated in

the state of Delaware with principal places of business in Bentonville, Arkansas. Both have already made appearances in this matter through counsel.

## II. JURISDICTION

4. This Court has jurisdiction over the matter under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five thousand dollars ($75,000) and because Plaintiff is a citizen of New York while Defendants are citizens of other states. Defendant Tyson removed this case from the 113th Judicial District Court of Harris County, Texas.

## III. VENUE

5. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(a)(2) because it is the District in which all or a substantial part of the events or omissions giving rise to the claim occurred.

## IV. FACTS

6. On or about May 24, 2011, Plaintiff was an employee and patron of Defendant Wal-Mart and was eating in the store delicatessen pursuant to an implied business invitation from Defendant Wal-Mart, located at 26270 Northwest Frwy, Cypress, Texas 77429.

7. While on a break, Plaintiff purchased a chicken nugget meal from Defendant Wal-Mart's delicatessen. Defendant Wal-Mart encouraged Plaintiff to remain alert to the needs of customers and to assist customers during breaks.

8. As Plaintiff was consuming the chicken, she consumed glass that was contained therein. Upon realizing she had consumed a foreign object, Plaintiff coughed

up what glass that she was able to and immediately ceased eating.

9. On May 27, 2011, Plaintiff sought treatment for her throat soreness. She was diagnosed with a pharyngeal abrasion, given a shot of the steroid Decadron and sent home with a prescription for Azithromycin, an antibiotic.

10. In the days following, Plaintiff developed a rash on her chest and began suffering from dizziness, vomiting, diarrhea.

11. On June 1, 2011, Plaintiff was scheduled to work. When Plaintiff called Defendant Wal-Mart to let them know she wasn't feeling well enough to work and that she was going to go the Emergency Room, Defendant Wal-Mart instructed Plaintiff to go ahead and come in to work and they would take her to the doctor.

12. Plaintiff did as instructed and was taken to the doctor that morning. He determined from her symptoms that Plaintiff was likely suffering from an allergic reaction to the Azithromycin and gave her a Zyrtec.

13. Plaintiff was then taken back to Wal-Mart and made to fill out paperwork regarding the incident. Plaintiff told Defendant Wal-Mart on numerous occasions that she wanted to go home and lay down because she was feeling dizzy and lightheaded but she was told she needed to stay and fill out more paperwork before she could go home.

14. About 4-5 hours after initially arriving at the Wal-Mart store that morning, Plaintiff fainted, falling out of the chair in which she was sitting and striking her head on the floor. Plaintiff was taken to a nearby emergency room by ambulance where she was again determined to have suffered a syncopal event as a result of an allergic reaction to the Azithromycin.

15. Defendant Tyson sold Defendant Wal-Mart the chicken nugget meal consumed by Plaintiff. Defendant Tyson had reason to know that the goods were to be consumed by humans and that Defendant Wal-Mart and their patrons and employees relied on Defendant Tyson's skill and judgment to furnish goods that did not include a dangerous object as described herein. The chicken nugget product furnished by Defendant Tyson through Defendant Wal-Mart deviated in its quality from specifications in a manner that rendered the product unreasonably dangerous. The said product was unreasonably dangerous, and Defendants should not have provided the product to Plaintiff without reasonable inspection and preparation.

16. While eating the Defendant Tyson chicken nugget meal provided and sold by Defendant Wal-Mart during her employment with Defendant Wal-Mart, Plaintiff sustained serious and resulting foreseeable injuries and damages.

17. As Plaintiff was eating the chicken, she ate glass that was in the chicken. Plaintiff sought reasonable and foreseeable medical and pharmaceutical treatment to resolve the injuries related to the glass ingestion and said treatment foreseeably resulted in further injuries including but not limited to neurological and brain injuries and related damages in this cause.

18. Plaintiff suffered serious injuries a direct result of Defendant Wal-Mart and Tyson Foods, Inc.'s negligence, specifically, Plaintiff ingested pieces of a glass-like jagged material, contained in the said chicken nuggets and served by Defendant Wal-Mart, which was sold to Defendant Wal-Mart through the stream of commerce and by contract. Plaintiff never contemplated that glass objects would be provided for purchase

to her by Defendant Wal-Mart and or provided by Defendant Tyson for her consumption and ingestion.

19. At all times mentioned herein, Defendant Wal-Mart did not have in force an approved policy of workers' compensation insurance for Plaintiff's benefit that would have provided adequate, reasonable, and certain benefits to Plaintiff in the event she was injured during the course of her employment such as in this case. Defendant Wal-Mart was not a subscriber to the Texas Workers' Compensation Act on May 24, 2011, the date that Plaintiff suffered her injury which is the basis of this lawsuit. Defendant Wal-Mart, therefore, has waived all common law defenses, including but not limited to the defenses of contributory negligence, by intent, and assumption of risk in this lawsuit as "non-subscribers" to the Texas Workers' Compensation Act.

## PLAINTIFF'S CLAIM OF RESPONDEAT SUPERIOR

20. Under the doctrine of *respondeat superior*, Defendant Wal-Mart is vicariously liable for the actions of its employee(s) who were acting within the course and scope of their employment.

## PLAINTIFF'S CLAIM OF NEGLIGENCE, NEGLIGENCE PER SE AND LIABILITY AGAINST DEFENDANT WAL-MART

21. Defendants all individually knew or should have known of the said dangerous conditions that existed in the chicken product that was served in Defendant Wal-Mart's delicatessen. Quality control, inspection, and safety procedures were not implemented, utilized, and/or provided to safeguard consumers and/or employees from injuries such as Plaintiff suffered in this case.

22. Plaintiff alleges that Defendant was negligent and in violation of Texas Labor Code Sec. 411.103 which states:

"Each employer shall:

(1) provide and maintain employment and a place of employment that is reasonably safe and healthful for employees;

(2) install, maintain, and use methods, processes, devices, and safeguards, including methods of sanitation and hygiene, that are reasonably necessary to protect the life, health, and safety of the employer's employees; and

(3) take all other actions reasonably necessary to make the employment and place of employment safe."

23. Plaintiff would further show the Court that her injury was proximately caused by Defendants' negligence in one or more of the following particulars:

   a. In failing to provide a reasonably safe place to work for employees such as Plaintiff;
   b. In failing to warn Plaintiff of the said dangerous conditions;
   c. In failing to maintain a reasonably safe place to work;
   d. In failing to adequately train and supervise employees; and
   e. In failing to ensure that the food product being served to consumers/employees is safe to consume.

24. Plaintiff incorporates all previous paragraphs, and in the alternative and additionally plead to the Court, with respect to Defendant Wal-Mart, the following allegations and complaints in this cause.

25. At all times mentioned herein, Defendant Wal-Mart owned and operated

the property and delicatessen in question located at 26270 Northwest Frwy, Cypress, Texas 77429.

26. At all times mentioned herein, Defendant Wal-Mart had such control over the premises in question that Defendant Wal-Mart owed certain duties to Plaintiff, the breach of which proximately caused the injuries set forth herein.

27. Defendant Wal-Mart and/or its agents, servants, and employees negligently permitted the service of Plaintiff's chicken nugget meal which contained shards of a glass-like object, negligently allowed such condition to continue and negligently failed to warn Plaintiff of the glass-like object that may have been in her chicken nuggets. This condition existed despite the fact that Defendant Wal-Mart and/or its agents, servants, and employees knew or should have known of the existence of the aforementioned condition and that there was likelihood of a person being injured as occurred to Plaintiff.

28. Furthermore, Plaintiff would show the Court that the glass-like object in the chicken nugget meal had existed prior to Plaintiff being served her chicken nugget meal and continued for such period that, had Defendant and/or its agents, servants, and employees exercised ordinary care in the preparation and service of Plaintiff's food, it would have been noticed and corrected by such persons.

29. At all times pertinent herein, Defendant Wal-Mart and/or its agents, servants, and employees, who were acting in the scope of their employment, were guilty of negligent conduct toward Plaintiff as described herein.

30. At all times pertinent herein, Defendant Wal-Mart and/or their agents, servants, and employees, who were acting in the scope of their employment, were guilty

of conscious indifference for the safety of and/or negligent and negligence per se conduct toward Plaintiff in:

   a. Failing to properly prepare food to be consumed by Plaintiff;

   b. Failing to give adequate and understandable warnings to Plaintiff of the unsafe condition of the food that was to be consumed;

   c. Failing to give warnings to Plaintiff of the unsafe conditions;

   d. Failing to adhere to proper food care requirements and regulations as required by the Harris County Health District;

   e. Failing to adhere to proper personnel, handling, and source requirements and regulations as required by the Harris County Health District;

   f. Failing to adhere to proper facility and equipment requirements and regulations as required by the Harris County Health District; and

   g. Failing to adhere to reasonable safety requirements, regulations, codes, ordinances, and Texas Food Service Laws for Patrons.

### PLAINTIFF'S CLAIM OF NEGLIGENCE AGAINST DEFENDANT TYSON FOODS, INC.

31.  Plaintiff hereby pleads additionally and in the alternative, and herby also incorporates by reference all preceding paragraphs and further alleges as follows:

32.  Defendant Tyson Foods, Inc. designed, produced and warrantied, manufactured and placed the subject chicken nugget meal product into the stream of commerce.

33.  The said chicken nugget meal sold at Defendant Wal-Mart reached Plaintiff in the same or substantially the same condition in which it was sold to Plaintiff and provided to Defendant Wal-Mart for sale to patrons and employees such as Plaintiff. When the said chicken nugget meal was provided to Plaintiff, it was expressly and/or

impliedly represented to be safe and free from latent defects, such as glass-like objects that would be ingested.

34. Defendant Tyson was negligent in the production, manufacturing, warranty and/or design of the said chicken nugget meal. Defendant knew, or in the exercise of ordinary care should have known, that the chicken nugget meal was defective and unreasonably dangerous to those persons likely to use and consume the chicken nugget meal for the purpose and in the manner for which it was intended. Defendant Tyson owed Plaintiff the duty of reasonable and ordinary care when it manufactured, warrantied, produced and designed the said chicken nugget meal sold to Plaintiff at Defendant Wal-Mart delicatessen.

35. Defendant Tyson, by and through its officers, employees, agents and representatives, violated their duty of care and on the occasion in question, committed acts of omission and/or commission, which collectively and severally, constitute negligence. Defendant Tyson's negligent acts include without limitation the following:

   a. Negligently manufacturing, producing and designing the chicken nugget meal such that the chicken nugget meal was not safe for human consumption;

   b. Failing to adequately test the quality and safety of the said chicken nugget meal such that the glass-like object would not be included in the meal product;

   c. Furnishing, distributing and/or placing into the stream of commerce a chicken nugget meal known to be defective and dangerous as the chicken nugget meal was known to contain foreign objects, causing personal injury to those who come into contact with the same;

   d. Designing, distributing and selling the subject chicken nugget meal when Defendant Tyson knew or should have known that it was

       defective and unreasonably dangerous condition of the chicken nugget meal;

   e. Failing to adequately warn the general public and Plaintiff of the potential danger of the chicken nugget meal, including the dangers of glass-like objects in the chicken nugget meal; and

   f. Failing to take steps to immediately remove the chicken nugget meal from the stream of commerce once they knew, or should have known, that there were reports of problems of the chicken nugget meal under reasonably foreseeable conditions.

36. The aforementioned allegations resulted in the creation of a condition which posed an unreasonable risk of harm. Additionally, Defendant Tyson failed to exercise ordinary care to protect Plaintiff from the danger of glass-like objects in the chicken nugget meal by both failing to adequately warn Plaintiff and Defendant Wal-Mart of the condition and failing to make the said dangerous conditions safe to patrons and consumers such as Plaintiff.

37. At the time of the incident in question, Defendant Tyson knew or should have known that safer alternative chicken nugget meal product was available and that it was capable of making and/or manufacturing such production and manufacturing changes to protect consumers such as Plaintiff.

38. As a direct and proximate result of Defendant Tyson's negligence, Plaintiff has suffered foreseeable resulting injuries and damages, for which Defendant Tyson should be held liable.

## MANUFACTURING DEFECT

39. The said chicken nugget meal product had a manufacturing defect when it left the possession of Tyson. This defect rendered the product unreasonably dangerous at

the time it left Tyson's possession. This defect was the producing cause of Plaintiff's injuries.

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

40. Defendant Tyson had reason to know the particular purpose for which the said chicken nugget meal product was required, for human consumption. Tyson had reason to know that Defendant Wal-Mart and Plaintiff were relying on Defendant Tyson's skill and judgment to furnish suitable goods for human consumption. Tyson breached the implied warranty of fitness for a particular purpose. This breach was a proximate cause of Plaintiff's injuries and resulted in foreseeable damages and injuries.

## DAMAGES FOR PLAINTIFF

41. All previous paragraphs are incorporated herein.

42. As a direct and proximate result of the occurrence made the basis of this lawsuit, and Defendants' acts as described herein, Plaintiff proximately suffered bodily injuries which include but are not limited to a lacerated tongue, mouth, esophagus, stomach, and intestine; headaches; head injury; brain injury; psychological injury, etc., and endured anxiety, pain, and illness resulting in damages more fully set forth below. All of Defendants' employees' negligent acts or omissions relevant to this lawsuit are imputed to Defendants named here through the doctrine of *respondeat superior*.

43. As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff has incurred the following damages:

    a. Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff for the necessary care and treatment of the injuries

       resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services in the counties in which they were incurred;

   b. Reasonable and necessary medical care and expenses which will in all reasonable probability, be incurred in the future by Plaintiff;

   c. Physical pain and suffering in the past;

   d. Physical pain and suffering in the future;

   e. Physical impairment in the past;

   f. Physical impairment which, in all reasonable probability, will be suffered in the future;

   g. Lost wages in the past;

   h. Loss of wage earning capacity in the future;

   i. Disfigurement in the past; and

   j. Disfigurement in the future.

44. Plaintiff alleges that the amount of damages which should be awarded as a reasonable cash compensation for the foregoing injuries and elements are within the jurisdictional limits of the Court.

45. Without limiting the allegations of the preceding paragraph, but to furnish notice to Defendants, Plaintiff would show that from the date of injury to the date of the filing of this pleading, she has incurred reasonable and necessary expenses for medical care and treatment for the injuries proximately resulting from Defendants' conduct and negligence as described in this Petition, including doctor and nursing care costs, hospital charges, medical and prescription drug expenses.

46. In all reasonable and medical probability, Plaintiff will sustain further

expenses and costs in specific amounts for medical care and treatment, additional expenditures and all other damages described herein, subsequent to the filing of this pleading and prior to the date of verdict and for the balance of her natural life for all of which Plaintiff hereby sues Defendants, individually.

## JURY DEMAND

47.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that judgment be entered for Plaintiff against Defendants individually for damages in an amount in excess of the minimum jurisdictional limits of this Court; together with pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law; post-judgment interest at the legal rate; costs of court; attorney's fees, penalties, and, such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

/s/ Chris Bennett
Chris Bennett
State Bar No. 24069367
cbennett@thezimmermanlawfirm.com
Michael Zimmerman
State Bar No. 22271400
mzimmerman@thezimmermanfirm.com
The Zimmerman Law Firm
3501 W. Waco Drive
Waco, Texas 76710

>   (254) 752-9688
>   (254) 752-9680 (fax)
>
>   Greg White
>   State Bar No. 2139050
>   greg.white@texapplaw.com
>   P.O. Box 2186
>   Waco, Texas 76703
>   (254) 717-5728
>   (866) 521-5569 (fax)
>
>   *Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF System on this 31st day of October, 2013, with service to:

Zach Mayer
Brian Fisher
Kane Russell Coleman & Logan PC
1601 Elm Street, Suite 3700
Dallas, Texas 75201

*Attorneys for Defendants Tyson Foods, Inc.,*
*Wal-Mart Associates, Inc. and*
*Wal-Mart Stores of Texas, LLC*

>   /s/ Chris Bennett
>   Chris Bennett